UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL MARCUS GANN,<br><br>Plaintiff,<br><br>v.<br><br>R. GARCIA, et al.,<br><br>Defendants. | Case No. 1:19-cv-0439-DAD-JLT (PC)<br><br>**ORDER GRANTING DEFENDANTS' REQUEST FOR SCREENING; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS**<br><br>(Docs. 11, 13.)<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff has filed a first amended complaint asserting constitutional claims against governmental employees and/or entities. (Doc. 11.) Generally, the Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

///

1

I. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

II. **Plaintiff's Allegations**

Plaintiff's claims arose during his incarceration at California Substance Abuse and Treatment Facility ("CSTAF") and at Valley State Prison ("VSP"). He names 17 defendants, including two institutional defendants: CSATF and the California Department of Corrections and Rehabilitation. On the CSATF Receiving and Release ("R&R") staff, Plaintiff names Correctional Officers R. Garcia, B. Piper, D. Ibarra, W. Cotter, and N. Scaife. On the CSATF administrative staff, he names Associate Warden M. Hacker and Warden S. Sherman. He also names five individuals involved in the processing of an inmate appeal: CSATF Appeals Coordinators J. Zamora, J. Corral, and R. Ramos; and Appeals Examiner T. Lee and Chief at the Office of Appeals

2

1 M. Voong. Additionally, he names VSP Sergeant S. Clark. Lastly, he names CSATF John Doe 1
2 (believed to be either R. Garcia or N. Scaife) and John Doe 2 (a CSATF mailroom employee).

3 Plaintiff asserts several claims arising under the U.S. Constitution, including: (1) First
4 Amendment retaliation, (2) First Amendment mail tampering, (3) First Amendment access to court,
5 (4) First Amendment religious observance and expression, (5) Eighth Amendment cruel and
6 unusual punishment, (6) Fourteenth Amendment right to property, (7) Fourteenth Amendment
7 grievance process, (8) Fourteenth Amendment false allegations, and (9) Fourteenth Amendment
8 estoppel. Plaintiff also asserts claims arising under California state law. Plaintiff seeks damages,
9 declaratory relief, and injunctive relief.

10 Plaintiff's allegations may be fairly summarized as follows:

11 **A. Retaliation**

12 Plaintiff was housed at CSATF from December 2014 to December 2016 before his transfer
13 to VSP. During his incarceration at CSATF, Plaintiff was an outspoken member of the Inmate
14 Advisory Counsel ("IAC") and a frequent filer of inmate appeals and related documents
15 (government claims forms, reports to the Office of Inspector General, etc.). Several defendants
16 were present at some of these IAC meetings, to include CO Cotter, Associate Warden Hacker, and
17 Warden Sherman.

18 On December 27, 2016, the IAC engaged in an adversarial meeting with R&R staff,
19 including CO Piper and CO Garcia, regarding the wrongful confiscation of inmates' property. The
20 next day, Plaintiff was called to R&R where CO Piper and CO Garcia were working. When he
21 arrived, these defendants said, "Well look who it is. It's the [IAC] guy." CO Garcia asked, "What
22 should I do with him?" CO Piper responded, "Whatever you want" and, turning to Plaintiff, said,
23 "Bet you won't bitch about us after today." They then confiscated Plaintiff's personal property,
24 which included a typewriter, legal documents and records, fiction manuscripts, Magic the
25 Gathering cards, personal photographs, trial transcripts and appellate documents, and appliances.
26 When Plaintiff asked that the property be set aside so that he could appeal the issue, CO Garcia
27 said, "You're never gonna get this stuff back. I don't care what you file. It'll already be gone." That
28 evening, Plaintiff's wife complained to CO Garcia and CO Piper's supervisor, CO Scaife, about

1  the confiscated property. CO Scaife took no action, and Plaintiff was transferred to VSP the next
2  morning. Plaintiff believes his Magic the Gathering cards and various gifts were "stolen/taken by
3  John Doe #1 due to the entirety of the situation."

4        Plaintiff filed an inmate grievance following the confiscation of his property. During the
5  review of the appeal, CO Ibarra claimed to have located some of Plaintiff's property and indicated
6  that he would send it to Plaintiff via institutional mail. However, "[a]fter conferring with R.
7  Garcia," CO Ibarra then joined with the "Green Wall (Prison Officer Gang)" to destroy some of
8  the property under the guise that it included illicit materials. Specifically, Plaintiff claims CO Ibarra
9  and Associate Warden Hacker informed him that his legal materials were missing and that, in their
10 place, was another inmate's personal property that included pornography.

11       On March 8, 2018, Warden Sherman "upheld the confiscation and destruction of property
12 … citing a lack of evidence despite his staff admissions of guilty and documentary evidence."

13       On March 13, 2017, VSP's Sergeant Clark called Plaintiff to sign a CDC-193 form ("Trust
14 Account Withdrawal Order") that Plaintiff claims was "manipulated by CSATF and its R&R staff."
15 Sergeant Clark told Plaintiff to fill out the top portion, which authorized a trust withdrawal, and the
16 bottom portion, which was a shipping label. Sergeant Clark then told Plaintiff to complete the
17 middle portion only if he was donating his property. As instructed, Plaintiff filled out the top and
18 bottom portions but left the middle portion blank.

19       On March 14, 2017, Sergeant Clark authored a CDC 128-B ("General Chrono") accusing
20 Plaintiff of refusing to cooperate with the appeals process by refusing to sign the trust withdrawal.
21 Accordingly, she denied Plaintiff's appeal. Plaintiff claims Sergeant Clark authored this falsified
22 document at the direction of CSATF CO Cotter, who "also joined in the retaliation," and that
23 Sergeant Clark "served as the intermediary for her Green Wall friends at CSATF (Ibarra, Cotter,
24 and Scaife – on behalf of the grievance against Garcia [and] Piper)."

25       On July 10, 2018, Plaintiff's inmate appeal was denied at the third level of review by T.
26 Lee and M. Voong with citation to institutional regulations relating to the safety of staff and
27 inmates. Plaintiff accuses defendants Zamora, Corral, Ramos, Lee, and Voong of delaying and
28 denying his administrative grievance "in furtherance of a retaliatory scheme" with the other named

4

defendants.

At some point during the appeal of his confiscated property, Plaintiff received his typewriter back, but it was broken. He was then offered another typewriter but only if he signed a waiver of his right to file a tort claim in state court. "This was done by Defendant Cotter, Ibarra, and Scaife."

### B.  Mail Tampering

Plaintiff has filed several complaints to state agencies regarding CO Garcia and CO Piper's confiscation of his property and other issues related to the conditions of his confinement. In a six-month period, plaintiff claims that only one letter was delivered. Plaintiff later "discovered" that his mail was being "intercepted by John Doe #2," a CSATF mailroom employee. He claims that the failure to send the outgoing mail has resulted, *inter alia*, in Plaintiff being barred from pursuing claims related to a back injury in Gann v. Ugwueze, Case No. 17c0341, a state action filed in the Kings County Superior Court. Allegedly, the government claimed that it did not receive Plaintiff's government claims form even though the form is listed on the CSATF outgoing mail log. Plaintiff does not describe how he "discovered" that John Doe 2 "intercepted" his mail during the six-month period.

### C.  Access to Court

Plaintiff claims that the property confiscated by CO Garcia and CO Piper included legal materials, the loss of which affected his ability to litigate cases. The materials included notes containing dates, names, and specific events related to the alleged denial of meals by some institutional staff members; notes regarding the alleged infringement of his religious freedom; and legal materials related to his claim of a broken back that serves as the basis of the aforementioned state case, Gann v. Ugwueze.

### D.  Religious Observance and Expression

Plaintiff is an observant Jewish inmate. On December 28, 2016, Plaintiff approached an unidentified CSATF captain because staff members had denied Jewish inmates the ability to light Chanukah candles and meet for services over the previous two days. Plaintiff claims that these staff members believed Chanukah was a fake holiday even though the CSATF captain had previously signed a memorandum authorizing observance of Chanukah. Plaintiff alleges that issues related to

1  the observance of Jewish holidays had been ongoing for a year.

2      Plaintiff also claims that during a one-week period, the dates of which remain uncertain,
3  meals were forcibly taken from him and other Jewish inmates. Plaintiff later brought this and other
4  issues up to Associate Warden Hacker and Warden Sherman at a CSATF IAC meeting to no avail.
5  Warden Sherman is alleged to have laughed and said sarcastically, "I'm sure my staff would never
6  do that intentionally."

7  **III.  Discussion**

8      **A.  Eleventh Amendment Immunity**

9      Plaintiff was previously informed that his claims against the CDCR and CSATF are
10 barred by the Eleventh Amendment. The Eleventh Amendment bars any suit against a state or
11 state agency absent a valid waiver or abrogation of its sovereign immunity. <u>Seminole Tribe of</u>
12 <u>Florida v. Florida</u>, 517 U.S. 44, 54 (1996); <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 (1890). This
13 immunity applies regardless of whether a state or state agency is sued for damages or injunctive
14 relief, <u>Alabama v. Pugh</u>, 438 U.S. 731, 732 (1978), and regardless of whether the plaintiff's claim
15 arises under federal or state law, <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 121
16 (1984).

17     Though Congress may validly abrogate a state's sovereign immunity by statute, the
18 Supreme Court has repeatedly emphasized that "§ 1983 was not intended to abrogate a State's
19 Eleventh Amendment immunity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 n.17 (1985); accord
20 <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).

21     Both the Ninth Circuit and the Supreme Court have recognized that the "State of
22 California has not waived its Eleventh Amendment immunity with respect to claims brought
23 under § 1983 in federal court." <u>Dittman v. California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999);
24 <u>see also Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 241 (1985), superseded on other
25 grounds by statute, Rehabilitation Act Amendments of 1986, 42 U.S.C. § 2000d–7 (observing
26 that the California Constitution does not waive the state's Eleventh Amendment immunity).

27     In the context of prisoner lawsuits against CDCR, the Ninth Circuit has expressly and
28 repeatedly held that CDCR and prisons within CDCR are immune from suit under the Eleventh

1 Amendment. See, e.g., Brown v. Cal. Dep't of Corrs., 554 F.3d 747, 752 (9th Cir. 2009) ("The district court correctly held that the California Department of Corrections and the California Board of Prison Terms were entitled to Eleventh Amendment immunity."); Fulcher v. Cal. Dep't of Corrs., 297 Fed. App'x 645, 646 (9th Cir. 2008) ( "[T]he California Department of Corrections ... is a state agency that is immune from liability under the Eleventh Amendment."); cf. Holley v. Cal. Dep't of Corrs., 599 F.3d 1108, 1111-12 (9th Cir.2010) (affirming dismissal of complaint against CDCR because California had not constructively waived its sovereign immunity by accepting federal funds). The CDCR and CSATF are therefore improper defendants.

### B. First Amendment

#### a. Retaliation

Plaintiff claims that most, if not all, of the defendants' actions were in retaliation for Plaintiff's outspokenness on the IAC and his filing of grievances, letters, and the like regarding the conditions of his confinement.

The fundamentals of a retaliation claim are easily summarized: "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)). It is the plaintiff's burden to prove each of these elements. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff states a cognizable First Amendment retaliation claim against CO Garcia and CO Piper for confiscating his personal property on December 28, 2016, immediately following Plaintiff's exercise of his free speech rights during an IAC meeting the day before. Regarding the remaining defendants, Plaintiff's allegations rely entirely on unsupported conjecture. As such, they are not cognizable.

#### b. Mail Tampering

Plaintiff alleges that, over a six-month period, John Doe 2 tampered with his outgoing

1 mail, to include a California Tort Claims Act form mailed in support of a claim related to a back
2 injury. While it is true that prisoners enjoy a First Amendment right to send and receive mail,
3 Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995), Plaintiff's allegations of mail tampering also
4 appear to be based solely on speculation. This claim must therefore be dismissed.

### c. Access to Court

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–15 (2002).

In either instance, "the injury requirement is not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. Inmates do not enjoy a constitutionally protected right "to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Id. at 355. Rather, the type of legal claim protected is limited to direct criminal appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to vindicate basic constitutional rights. Id. at 354 (quotations and citations omitted). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355 (emphasis in original).

To assert a forward-looking access claim, the non-frivolous "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Christopher, 536 U.S. at 416. To state such a claim, the plaintiff must describe this "predicate claim...well enough to apply the 'non-frivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id. It is not enough for Plaintiff merely to conclude that the claim was non-frivolous. The complaint should instead "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417-18.

1    Moreover, when a prisoner asserts that he was denied access to the courts and seeks a
2 remedy for a lost opportunity to present a legal claim (i.e, a backward-looking claim), he must
3 show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that
4 frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not
5 otherwise available in a future suit. Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing
6 Christopher, 536 U.S. at 413-14) (overruled on other grounds, Hust v. Phillips, 555 U.S. 1150
7 (2009) (reversed and remanded Phillips v. Hust, on qualified immunity grounds without change
8 or discussion of elements for an access to court claim)).

9    Finally, "[a]lthough prison officials may not obstruct a prisoner's access to the courts by
10 unreasonably blocking his access to a law library, prison officials may place reasonable
11 limitations on library access in the interest of the secure and orderly operation of the institution."
12 Id. (citing Bell v. Wolfish, 441 U.S. 520, 545–48 (1979)). "[P]rison law libraries and legal
13 assistance programs are not ends in themselves, but only the means for ensuring a reasonably
14 adequate opportunity to present claimed violations of fundamental constitutional rights to the
15 courts." Id. at 351 (internal quotes and citations omitted).

16    Liberally construed, Plaintiff's mail tampering claim is a backward-looking access to
17 court claim because he alleges that John Doe's conduct prevented Plaintiff from pursuing a tort
18 claim in his state case. Plaintiff does not, however, properly allege an injury in fact because his
19 state law tort claim is not one of the types of claims that must underly an access to court claim
20 (i.e., a criminal appeal, a habeas petition, or a civil rights claim).

21    Plaintiff further alleges that his confiscated property included legal materials relevant to
22 the presentation of claims concerning missed meals and religious freedom. But Plaintiff again
23 fails to allege actual injury since, other than general allegations related to these lost claims, he
24 does not identify the underlying claims in sufficient detail to allow the Court to determine their
25 viability. Without these additional allegations, the Court is again unable to properly analyze his
26 access to court claim.

27    **d.  Free Exercise**

28    The Free Exercise Clause of the First Amendment provides that "Congress shall make no

law respecting an establishment of religion, or prohibiting the free exercise thereof....." U.S. Const. amend I.  The United States Court of Appeals for the Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].' " *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079.  A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. *O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400.

Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).

"To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Id. (alteration in original) (quoting Cruz, 405 U.S. at 322).  To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see also Shakur, 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884–85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent."  Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." Id. (quoting San Jose Christian College v. City of

10

Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).  "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."  Id. (citation and internal quotation marks omitted)

Additionally, The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person:
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).  Plaintiff must allege facts demonstrating that defendant substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation or action at issue "substantially burdens" that religious exercise.  Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'"  Hartmann, 707 F.3d at 1124–25 (citing San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).  "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in Emp't Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 878–82 (1990)."  Int'l Church of Foursquare Gospel, 673 F.3d at 1067 (citing Guru Nanak, 456 F.3d at 988).  "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  Hartmann, 707 F.3d at 1124–25 (citing Warsoldier v. Woodford, 418 F.3d 989, 995

11

(9th Cir. 2005)).

Applying these legal standards, the Court finds that Plaintiff has not sufficiently alleged a claim for unconstitutional burden of religion under either the Free Exercise clause or RLUIPA. Plaintiff's allegations fail for vagueness and the inadequate linkage of his claim to any defendant. While Plaintiff does allege that Associate Warden Hacker and Warden Sherman were made aware of problems concerning the denial of holiday services for Jewish inmates over a one-year period, it is not clear what the specific problems were, how the services were denied, who denied the services, or even when the services were denied. Similar questions arise in the context of Plaintiff claims that he and other Jewish inmates were denied meals for a one-week period: Plaintiff does not allege who denied the meals, whether all or just some meals were denied, or when these denials occurred. For these reasons, Plaintiff's free exercise claim is not cognizable.

**C. Due Process**

  **a. Personal Property**

Much of Plaintiff's complaint is premised on the confiscation, loss, or destruction of his personal property. Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, a plaintiff has no due process claim based on Defendants' unauthorized deprivation of his personal property—whether intentional or negligent— if a meaningful state post-deprivation remedy for his loss is available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810– 895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); see also Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); Kemp v. Skolnik, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to Hudson and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court."). In light of this authority, Plaintiff fails to state a federal claim for Defendants' confiscation of his personal property.

### b. Inmate Grievances

Plaintiff again names several Defendants for their role in processing his administrative grievance. Prisoners, however, do not have "a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Prison officials are not required under federal law to process inmate grievances in any specific way. Plaintiff's claim that certain Defendants improperly denied or canceled his grievances does not state a cognizable claim for a violation of his due process rights because there is no right to a particular grievance process or response. See, e.g., Towner v. Knowles, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff failed to state claims that would indicate a deprivation of his federal rights after defendant allegedly screened out his inmate appeals without any basis); Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

### c. False Allegation

Plaintiff's claim against Sergeant Clark appears to be premised on her assertion of a false allegation against Plaintiff in a CDCR 128-B. However, the issuance of a false allegation does not, in and of itself, support a claim under section 1983. See, e.g., Ellis v. Foulk, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Solomon v. Meyer, 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.") (citing Chavira v. Rankin, 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The Constitution demands due process, not error-free decision-making.")); Johnson v. Felker, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d Cir. 1986)); Canovas v. California Dept. of Corrections,

13

2014 WL 5699750, at *2 n.2 (E.D. Cal. Oct. 30, 2014). Accordingly, Plaintiff fails to state a claim against Defendant Clark.

### D. California State Law Claims

Plaintiff brings several state law claims pertaining to the confiscation of his property, including a potential conversion claim, "character assassination," "harassment," "embarrassment," defamation, and "estoppel." Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3). In this case, the only cognizable federal claim is a First Amendment retaliation claim against CO Garcia and CO Piper. The remaining claims, which are based solely on state law, are numerous and will certainly predominate over that single federal claim. For this reason, the Court declines to consider the merits of these state law claims and will recommend that supplemental jurisdiction be declined over them.

## IV. Conclusion

Plaintiff's first amended complaint states only a First Amendment retaliation claim against CO Piper and CO Garcia. No other claims are cognizable as pled.

The Court must now determine whether to allow Plaintiff leave to further amend. Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When determining whether to grant leave to amend, courts weigh certain factors: "undue delay, bad faith or dilatory motive on the part of [the party who wishes to amend a pleading], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" See Foman v. Davis, 371 U.S. 178, 182 (1962). Although prejudice to

the opposing party "carries the greatest weight[,]...a strong showing of any of the remaining Foman factors" can justify the denial of leave to amend. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). Furthermore, analysis of these factors can overlap. For instance, a party's "repeated failure to cure deficiencies" constitutes "a strong indication that the [party] has no additional facts to plead" and "that any attempt to amend would be futile[.]" See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 988, 1007 (9th Cir. 2009) (internal quotation marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations — none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

Plaintiff has had two opportunities to state viable claims. Each time, his allegations were sufficient only as to CO Piper and CO Garcia. It appears, then, that Plaintiff has no additional facts to plead, rendering the option of amendment futile. Accordingly, the Court **GRANTS** Defendants' request for screening (Doc. 13), and the Court **RECOMMENDS**:

1. This action proceed against CO Piper and CO Garcia on a First Amendment retaliation claim and all remaining claims and defendants be dismissed without leave to amend; and

2. Supplemental jurisdiction be declined pursuant to 28 U.S.C. § 1367(c)(3) on Plaintiff's state law claims.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate

Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 26, 2020**              **/s/ Jennifer L. Thurston**
                                       UNITED STATES MAGISTRATE JUDGE